[Civ. No. 3273.   Third Appellate District.—June 9, 1927.]

ROBERT J. FINNIE et al., Respondents, v. CLARENCE
M. SMITH et al., Defendants; CLINTON L. WALKER,
Appellant.

[1] TRUSTS — IRREVOCABLE TRUST FOR SALE OF REAL PROPERTY —
RECORDATION—PURCHASER AT TRUSTEES' SALE—CREDITOR OF TRUS-
TOR—ATTACHMENT.—Where the owner of land conveyed to trustees
by means of a declaration of an express trust for the purpose of
selling and distributing the proceeds in a specified manner, and
where the trust instrument contained no reservation of title or
right of revocation, under section 863 of the Civil Code, the trustor
divested herself of all title and interest, legal or equitable, in the
land, and a judgment creditor of the trustor and a beneficiary of
the trust by attachment issued and served on the trustees acquired
no lien on the property superior to the right of a *bona fide* pur-
chaser from the trustees, despite the fact that the trustees' agree-
ment to sell the land was not recorded until after the levy.

[2] ATTACHMENT—UNRECORDED DEED.—An unrecorded deed or convey-
ance is effective as against a subsequent levy of attachment.

[3] TRUSTS—TITLE—INTEREST OF TRUSTOR.—An express trust to sell
real property and distribute the proceeds of sale in a specified
manner to designated beneficiaries, which declaration of trust
contains no reservation of title and no power of revocation, vests
the entire title in the trustee and absolutely divests the trustor
of all estate and interest in the property, under section 863 of the
Civil Code.

[4] ID.—CREDITOR OF BENEFICIARY—JUDGMENTS—LIENS—ATTACHMENT.
Where a trust in real property is created by a declaration of an
express trust for the sale and distribution of the proceeds in a
specified manner, with no reservation of title or right of revoca-
tion, in the absence of fraud, an attaching creditor of a bene-
ficiary acquires no lien upon such property for the satisfaction
of his judgment, but may, in a proper proceeding, attach the
proceeds of sale for the payment of his debt.

---

(1) 39 Cyc., p. 377, n. 22.   (2) 6 C. J., p. 293, n. 67.   (3) 39
Cyc., p. 207, n. 22, p. 245, n. 13.   (4) 39 Cyc., p. 242, n. 92.

2.  Priorities as between unrecorded deed or mortgage of real
estate and lien acquired by attachment, note, L. R. A. 1918A, 1089.
See, also, 3 Cal. Jur. 492; 2 R. C. L. 860.

3.  See 25 Cal. Jur. 315, 316; 26 R. C. L. 1258.

4.  See 3 Cal. Jur. 493.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Preston & Duncan for Appellant.

A. E. Cooley and Theodore W. Chester for Respondents.

THOMPSON (R. L.), J., *pro tem.*—This is an action to quiet title to 1,032 acres of land situated in Colusa County.

The facts are not disputed. Sarah Doak, a widow, was the owner of an undivided seventeen-twentieths of the land in question. The balance was owned by the estate of Theodore A. Bell, deceased. March 30, 1922, Sarah Doak executed a conveyance in trust of her entire interest in this property to her two sons, Fred M. Doak and Bert G. Doak. This trust conveyance was recorded July 31, 1923, by the express terms of which the trustor, Sarah Doak, conveyed this property to her trustees, "to sell . . . upon the best obtainable terms, but at a price of not less than forty-two thousand five hundred dollars ($42,500.00), unless the trustor shall consent to a sale for a lesser amount, and to pay to the following named persons from the proceeds of such sale, the sums set opposite their respective names, to-wit: To William C. Doak, $5,000.00; to John L. Doak, $5,000.00; to Bert G. Doak, $5,000.00; to Claude K. Doak, $5,000.00; to Charles Doak $5,000.00; and to retain the balance of said proceeds, in trust, for the use and benefit of the Trustor, . . . "

May 25, 1923, the trustees executed a written agreement to sell and convey said real property to the plaintiff, Robert J. Finnie, in consideration of the sum of $29,300, payable in installments, three-twentieths of which purchase price was to be paid to the estate of Theodore A. Bell, deceased, for its interest in the property. This sale was duly approved by Sarah Doak, the trustor, and the purchaser immediately entered into possession. Pursuant to the terms of this contract of sale the purchaser agreed to commence the construction of a clubhouse on said premises before September 1, 1923, and to complete and equip the same at an expense of not less than $8,000. It

was further agreed that upon the payment of one-half of the purchase price a deed of conveyance was to be executed to the purchaser, who was to thereupon execute and deliver to the trustees his promissory note for the balance of the purchase price secured by mortgage on said real property. This agreement was subsequently modified, in accordance with the provisions of which the purchaser, on November 15, 1923, deposited in escrow in the Gridley branch of the Bank of Italy, the sum of $12,452.50, together with $311 interest, to be held by said bank pending the trial of a proposed suit to quiet title to said land, after which the sum so deposited was to be distributed in accordance with the written instructions accompanying the same. These instructions, after directing the payment of taxes, among other things, provided for the payment from said deposit, to the proper parties of "such amounts as are held to be liens on said property by final judgment in said action to quiet title." And further provided, "that in the event of said property, or any part thereof being offered for sale . . . (said trustees were) to satisfy such final judgment against said property." In that event said judgment was to be discharged from said lien. And in order to prevent the actual sale of said property, an injunction was to be sued out to restrain the sale, if necessary. The instructions to the bank further provided that: "Ninety days after the filing of said quiet title action (said bank was) to pay $1,000.00 to Bert G. Doak and $1,000.00 to John L. Doak and if judgment in said action has become final in favor of the plaintiff therein against Clinton L. Walker, who will be a defendant therein, to pay each of said parties the additional sum of $1,000.00."

Upon making said deposit pursuant to said agreement, and escrow instructions, on November 15, 1923, a deed of conveyance was duly executed and delivered to plaintiff, who immediately thereupon executed and delivered to the trustees his promissory note for the balance of the purchase price, secured by mortgage on said real property. Upon proceedings duly had in the matter of the estate of Theodore A. Bell, deceased, the remaining three-twentieths interest in said real property was also conveyed to plaintiff.

Subsequent to the agreement of sale of said real property by the trustees, but prior to the actual execution of the

deed of conveyance, the appellant Clinton L. Walker instituted two separate suits in Monterey County, one of which was against Claude K. Doak and Sarah Doak, in which action he finally recovered a judgment by default for the sum of $6,920. The other action was prosecuted against Claude K. Doak alone, and likewise resulted in a judgment by default for $2,650. In each of these cases writs of attachment were duly issued and on July 26, 1923, served upon this plaintiff, the trustees, Clauke K. and Sarah Doak, and levied against all of their right, title, interest, or estate in or to said real property.

By the terms of the trust instrument heretofore referred to, certain bonds and personal property were also conveyed to the trustees for the purposes therein specified. This personal property, however, is not involved in the title to said real property, and for the purposes of this opinion its transfer is immaterial.

The trial court found that the plaintiff was the sole owner of said real property and entitled to the possession thereof, and that this appellant, nor any of the other defendants, had any right, title, interest, or lien upon said real property by virtue of said attachment or otherwise, and thereupon quieted title in plaintiff. From this judgment the defendant Clinton L. Walker has appealed.

The sole question on appeal is whether said attachments created a lien upon the title to said real property.

Appellant contends that the beneficiaries under the declaration of trust retained an equitable interest in the land in question which was subject to attachment by judgment creditors.

[1] The title to the property involved in this action was conveyed to the trustees by means of this declaration of an express trust for the purpose of sale, on March 30, 1922. By this instrument the trustor was divested of title, and the title was thereby absolutely vested in the trustees for the purpose of sale. Section 863 of the Civil Code provides: "Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust." The attachment under which the

appellant claims a lien upon this property was not levied until July 26, 1923. In the meantime a valid binding agreement to sell the property was executed and delivered May 25, 1923, pursuant to which the purchaser had actually taken possession of the premises. At the time of the attachment, therefore, no title remained in the trustor, Sarah Doak, subject to such lien, and the interest of the beneficiaries was confined solely to the proceeds of said sale as provided by the terms of the trust instrument, and could in no way affect the title to the real property which had already actually passed. The attachment which was subsequent to the trust conveyance, was, therefore, subject to that transfer of title in spite of the fact that the agreement to sell the property was not recorded until after the levy. In the case of *National Bank of the Pacific* v. *Western Pacific Ry. Co.*, 157 Cal. 573 [21 Ann. Cas. 1391, 27 L. R. A. (N. S.) 987, 108 Pac. 676], it is said: "A creditor who attaches property for his debt obtains a lien only upon the title or interest which the debtor has in the property at the time of the levy, and that if, at that time, all title and interest therein has passed from the debtor to third person, the attaching creditor gets nothing by the levy. (*Tuohy* v. *Wingfield*, 52 Cal. 319; *Howell* v. *Foster*, 65 Cal. 173 [3 Pac. 647]; *Ward* v. *Waterman*, 85 Cal. 508 [24 Pac. 930].)"

[2] An unrecorded deed or conveyance is effective as against a subsequent levy of attachment. (*Morrow* v. *Graves*, 77 Cal. 218 [19 Pac. 489]; *Commercial National Bank of Los Angeles* v. *Roberts*, 49 Cal. App. 764 [194 Pac. 751].)

Moreover, in 5 Thompson on Real Property, 337, section 4250, it is said: "Actual possession of land by one who holds an unrecorded contract of purchase, or a bond for deed, is notice of his rights." (2 Tiffany on Real Property, 2d ed., 2220, sec. 571; *Grants Pass L. & W. Co.* v. *Brown*, 168 Cal. 456 [143 Pac. 754]; *Beattie* v. *Crewdson*, 124 Cal. 577 [57 Pac. 463].)

[3] An express trust to sell real property and distribute the proceeds of sale in a specified manner to designated beneficiaries, which declaration of trust contains no reservation of title and no power of revocation, vests the entire title in the trustee and absolutely divests the trustor of all

estate and interest in the real property. (Civ. Code, sec. 863; *Ward* v. *Waterman,* 85 Cal. 488 [24 Pac. 930]; *Craven* v. *Dominguez Estate Co.,* 72 Cal. App. 713 [237 Pac. 821].) [4] It naturally follows, that under such circumstances, in the absence of fraud, an attaching creditor of a beneficiary under such a trust sale will acquire no lien upon the real property thus conveyed for the satisfaction of his judgment. A *bona fide* purchaser of real property thus acquired is entitled to a decree quieting his title against such beneficiaries and their creditors. But in a proper proceeding the beneficiaries may enforce a distribution of the proceeds of sale and specific performance of the provisions of the trust. And likewise, in a proper proceeding, the creditors of the beneficiaries may attach the proceeds of sale for the payment of their debt.

Appellant correctly says that, pursuant to the provisions of section 863 of the Civil Code, the trustees under an express trust take the entire title to the property involved, both legal and equitable, so far as it is necessary to carry out the purposes of the trust. In other words, the *quantum* of title is measured by the express purposes declared in the trust created. But this does not mean that because the declaration of trust enjoins upon the trustees the duty of distributing the proceeds of the sale of land, that, therefore, a judgment creditor of a beneficiary under the trust may have a lien upon the title to the land already conveyed. It is equally true, and appears to be the clear construction of our courts, that where by an express trust one is given the unqualified authority to sell and convey real estate, such trustee is thereby necessarily invested with the entire title so that he can carry out the trust and convey a good and sufficient title.

In the case of *Ward* v. *Waterman,* 85 Cal. 488 [24 Pac. 930], plaintiff commenced an action against defendant on a promissory note for $21,404, and attached all of defendant's interest in certain Alameda County land. Plaintiff recovered judgment, and an execution which was duly issued therein was returned *nulla bona.* Subsequently another action, which was in the nature of a creditor's bill, was instituted by plaintiff against the defendant Waterman and one Smith, in which it was alleged that Waterman had conveyed his one-eighth interest in the Alameda County

land to Smith to hold in trust in order to defeat and defraud the creditors of Waterman. The answer alleged that Waterman had been the owner of a contract to purchase said one-eighth interest in said land, which contract he had assigned to one Stanford as security for Stanford's accommodation indorsement on Waterman's $16,500 note. The statute of limitations ran upon this $16,500 note and subsequently Waterman conveyed this one-eighth interest in the Alameda County land to Smith "for the purpose of more conveniently making sales of said property, and in trust to divide the proceeds of such sales, . . . among the parties thereunto beneficially interested, and (in order) that the interest of said Waterman therein (which) is now held in trust by said Smith (may be devoted to) the purpose of paying the indebtedness of Waterman to Stanford, so far as the same can be applied to such payment." Defendant had judgment in the trial court and on appeal the supreme court said:

"The trust created in Smith is an express trust, under subdivision 1, section 857, of the Civil Code. It vests in Smith the whole title, legal and equitable. (Civ. Code, sec. 863.) By the very terms of the trust, whether we read it as originally written or as revised, Waterman had no interest in the property, and could never acquire any interest, unless he purchased it, as any stranger might do.

"The only right that any beneficiary under the trust had or has was to share in the proceeds of the rents and profits when realized, and of the sale of the land when sold, and the only remedy that of proceedings to enforce the execution of the trust. . . . Even if Waterman had an interest in the attached property, the lien of the attachment would be subject to all equities. (*O'Rourke* v. *O'Connor,* 39 Cal. 442; *De Celis* v. *Porter,* 59 Cal. 464.) Even an unrecorded deed would prevail against the lien of the attachment. (*Plant* v. *Smythe,* 45 Cal. 161; *Le Clert* v. *Oullahan,* 52 Cal. 252; *Hoag* v. *Howard,* 55 Cal. 564.) . . . Upon the true theory of this case, the plaintiff took nothing, and acquired no right, by the levy of his attachment. . . . As we have already seen, Waterman had no interest in the land, legal, equitable, present, or prospective. 'An attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment.

If, therefore, the property be in such a situation that the defendant has lost his power over it, or has not yet acquired such interest in or power over it as to permit him to dispose of it adversely to others, it cannot be attached for his debt. (*Howell* v. *Foster,* 65 Cal. 173 [3 Pac. 647].)''

The appellant attempts to distinguish the case of *Ward* v. *Waterman, supra,* from the one at bar, on the ground that that case was essentially an action to reform a declaration of trust. The pertinent language above quoted is disposed of by the appellant by the assertion that it is *dictum.* It is true that through the medium of a complaint in intervention, the declaration of trust was modified and reformed, but the primary purpose of that action was to force an alleged interest of Waterman in certain real property, to respond to the satisfaction of a judgment, by means of an attachment. The chief issue was whether the attaching creditor could fasten upon Waterman's interest in that real property to satisfy the judgment, after Waterman and the other joint owners had conveyed the land to Smith in trust for the purpose of selling the land and distributing the proceeds pursuant to the directions contained in the declaration of trust. The reforming of the trust in no way altered or affected the application of the principle which was declared by the court, to the effect that, in the absence of fraud, by the conveyance of his title, legal or equitable, Waterman had divested himself of all the right, title, and interest which he had in the property, and there was, therefore, no interest of Waterman's for the creditor to attach.

In the case of *Craven* v. *Dominguez, supra,* which, like the case at bar, was a suit to quiet title, the Dominguez Estate Company conveyed a large tract of land in trust to the Title Insurance Company by deed dated March 21, 1917. On that same day the Title Insurance Company executed a declaration of trust acknowledging the trust nature in which it held this same land for the purposes of subdivision, sale, and distribution of the proceeds thereof to certain beneficiaries named. On March 20, 1920, while the land was still standing in the name of the Title Insurance Company as trustee, the Dominguez Estate Company executed and delivered an oil lease affecting 140 acres of said tract of land. On April 19, 1920, the Title Insurance Company executed and

delivered to plaintiff Emma Craven a deed of conveyance to the same 140-acre tract covered by the oil lease. Plaintiff then had notice and knowledge of the previous execution of the oil lease on the part of the Dominguez Estate Company. On August 21, 1921, the Title Insurance Company executed a written declaration attempting to ratify the oil lease which was made by the Dominguez Company prior to the execution of the deed of conveyance to the plaintiff. Upon these facts the trial court quieted title in plaintiff, which judgment was affirmed by the district court of appeal and a hearing was denied by the supreme court. It was there contended that the Dominguez Estate Company was the real owner of the property and that the grantee of the 140-acre tract took it with notice and was bound by the former oil lease. The court said:

"The trust thus created was an express trust to sell real property and dispose of the proceeds of such sale. . . . 'Express trusts may be created for any of the following purposes: 1. To sell and convey real property and to hold or reinvest or apply or dispose of the proceeds in accordance with the instrument creating the trust.' (Civ. Code, sec. 857.) As a general rule every express trust in real property, valid as such in its creation, vests the whole estate in the trustee subject only to the execution of the trust. The beneficiary takes no estate or interest in the property, but may enforce the performance of the trust. (Civ. Code, sec. 863.)

" . . . In our opinion this trust comes within the general rule expressed in section 863. As we have seen, by the terms of this section, the absolute title to the trust property is vested in the trustee, and the only interest the beneficiary has therein is to enforce the trust. As against the trustee and those lawfully claiming under him, the beneficiary has no interest in the property itself, but only in the proceeds thereof after the property has been sold by the trustee. This was so held by the supreme court in construing a trust similar to the one before us. . . . (*Ward* v. *Waterman*, 85 Cal. 488, 506 [24 Pac. 930].) The beneficiary, the Dominguez Estate Company, therefore, having no interest legal or equitable in the trust property, an attempted transfer thereof by it either in the form of a deed or lease, as against the trustee or its grantee, would

not convey any interest in the trust property. On the other hand, the trustee, being vested with both the legal and equitable title, not only could convey by deed a good title to the trust property, but it is the only person clothed with such power.

"A trustee has all the authority necessary to carry out the objects and purposes of the trust. This is true even though the instrument creating the trust may not directly confer upon him such power. The quantity of interest which passes to the trustee in case of an express trust is commensurate with the necessities of· his office; the trustee shall have an estate in fee, if that is necessary, to enable him to perform the duties imposed upon him, . . . ; on this principle a devise of lands in trust to sell clothes the trustee with the fee, because necessary to the execution of the trust. . . . (Citing Perry on Trusts, sec. 320; *Young* v. *Bradley,* 101 U. S. 787 [25 L. Ed. 1044, see, also, Rose's U. S. Notes].)

"The Title Insurance and Trust Company as trustee, therefore, took an estate in the trust property adequate to the execution of the trust, and as the trust was to convey an absolute title to the lands and to distribute the proceeds of all sales thereof, it was necessary for it to own and hold the absolute title to the trust property. . . .

" 'The creator (of a trust) may, by the provisions of the instrument creating the trust, be divested of an estate or interest in the trust property. Thus where a trust deed creates a valid trust and gives a power of sale to the trustee at the request, and for the benefit of, the beneficiary under the deed, no power of revocation being reserved, no estate in the premises is left in the grantor, which is capable of being transferred.' (39 Cyc. 245. See, also, *Marvin* v. *Smith,* 46 N. Y. 571; *Kopp* v. *Gunther,* 95 Cal. 63 [30 Pac. 301]; *Wilhoit* v. *Cunningham,* 87 Cal. 454 [25 Pac. 675].)

"It follows, therefore, that the Dominguez Estate Company had no interest in the trust property which it could transfer by deed or otherwise, . . . "

The foregoing authorities clearly hold that where a declaration of trust conveys real property to a trustee for the purpose of selling the land and distributing the proceeds of sale in a specified manner, and where the trust instrument contains no reservations of title or right of

revocation, that the trustor thereby divests himself of all title to the land. It naturally follows that if the trustor has no interest in the land, legal or equitable, there is no title upon which the judgment creditor of a beneficiary can fasten by means of an attachment. In a careful analysis of the cases cited by appellant there appears to be no case cited which is in real conflict with the principle announced in the foregoing cases.

The appellant contends that just the opposite doctrine has been announced in the case of *Kennedy* v. *Nunan*, 52 Cal. 326. The entire opinion of the court in that case is as follows:

"It is provided by section 688, Code Civil Procedure, that 'all goods, chattels, moneys, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, . . . are liable to execution.' The deed of trust vested or left an interest in the property in question in Thomas O. Larkin, and such interest is, under the Code, subject to sale under execution."

In view of the foregoing authorities, if this language in the Kennedy case can be said to conflict with these later decisions, the Kennedy case must be deemed to have been overruled. But since the terms of the trust deed involved in the Kennedy case are not set out in the opinion and since the court deliberately says "the deed of trust vested or left an interest in the property in question in Thomas O. Larkin," we must assume that unlike the declaration of trust in the instant case, the deed in the Kennedy case did specifically reserve an interest in the land in ·the trustor. In that event, of course, such interest would be subject to execution or attachment. But that reservation of interest was not made in the instant case.

In the case of *Le Roy* v. *Dunkerly*, 54 Cal. 452, cited by appellant, it is apparent that by the terms of the trust deed involved in that case, the title to the real property did not fully pass from the trustor. Clearly an interest in that property was reserved in the trustor. The court there says:

"It is a conveyance . . . upon express trusts, to be used only for such trusts, and the title to be returned to the city upon the fulfillment of the trusts. If the debts were paid by the city, or the creditors released their claims, the property would become again the property of the city

in full ownership. The legal title, as in other cases of trust deeds for the security of debt, was in the grantee; the equity of redemption and residuum after the satisfaction of the trust debts, in the city.''

These facts also distinguish this Le Roy case from the case at bar.

In the case of *James* v. *Throckmorton*, 57 Cal. 368, cited by appellant, it appears that the deed involved conveyed the real property in question with a limited trust or purpose of selling only so much of the property as was necessary to pay such debts as existed against the trustor which were a lien upon the property. The terms of this trust deed clearly left at least a possible interest in some of the lands involved. That was an equitable action which primarily decided that in order to constitute an equitable conversion of real property into personalty, there must be an absolute duty on the part of the trustee to actually sell the real property. Because, under the trust deed in that case, the sale was conditional and did not necessarily cover all the real property, it was, therefore, held that it did not constitute a conversion.

All that the case of *Fish* v. *Fowlie*, 58 Cal. 373, decides, which is pertinent to this case, is that one who holds a valid contract to purchase land possesses such an interest in the real property as is subject to attachment.

So, also, in the case of *Brown* v. *Campbell*, 100 Cal. 635 [38 Am. St. Rep. 314, 35 Pac. 433], cited by appellant as authority for the proposition that an attachment upon an interest reserved by a trustor in real property carries with it ''the right to recover these moneys, in the event of a sale of the land by the trustees (which are) a part of the thing attached in levying upon the entire equitable interest reserved to the fraudulent grantee by the trust deed.'' In that case the transfer of land was made to the trustee to secure the payment of an indebtedness due to the trustee. Under such circumstances it cannot be denied that the trustor would still retain an interest in the land. Moreover, in that case the court found that the trust deed in question was executed by the trustor to defraud creditors and was, therefore, void as against an attaching creditor.

In the case at bar there was no contention that the declaration of trust or the subsequent sale and conveyance

of the land in question was fraudulent or void. In fact, the appellant in his closing brief concedes that "We do not question the right of Finnie, the respondent, to receive title to this land under his contract upon his payment of amounts due thereunder. Our whole question is as to the right of the appellant here to receive that portion of the money which would belong to Claude Doak."

The sole question involved is whether defendant Walker can maintain an attachment lien upon land sold and conveyed in good faith to a *bona fide* purchaser for valuable consideration merely because he holds a judgment against a beneficiary of a trust by means of which the land was conveyed to the purchaser. This doctrine would make the purchaser of land through an express trust conveyance a guarantor for the faithful performance of the obligations of the trustee, and require the purchaser to see that the purchase money actually reached the hands of the beneficiaries who are entitled to it by the terms of a declaration of trust in which the purchaser is not concerned.

We are of the opinion that the declaration of trust in this case conveyed the title to the land in question to the trustees and that their subsequent contract of sale to plaintiffs was valid and binding, and that plaintiffs took the title free and clear of any subsequent attachment lien on the part of a judgment creditor of the beneficiaries under the trust.

For the foregoing reasons, the judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 8, 1927.