[No. 9,032.   Department One. — April 30, 1884.]

T. N. HOWELL, RESPONDENT, v. C. F. FOSTER, APPELLANT.

PLEADING — REPLEVIN — CLAIM FOR AFFIRMATIVE RELIEF. — The action was to recover possession of certain grain and hogs of which plaintiff claimed ownership. The defendant, a sheriff, denied the ownership of the plaintiff, and justified his possession under certain writs of attachment. He also alleged that after his levy under these writs, the plaintiff took the property from his possession by a writ of replevin, and he asked for its return. At the trial, the court permitted the plaintiff to amend his complaint by striking out all allegations in relation to the hogs, upon the oral statement of his counsel that the hogs had not been levied upon by the defendant, and also struck out from the answer all reference thereto. Held, that this was error, for if the averments of the answer were true, the effect of the action of the court would be to give possession of the hogs to the plaintiff, without affording the defendant an opportunity to try the question of his right to their return.

ATTACHMENT — LANDLORD AND TENANT. — A crop raised by a tenant of land, who holds under a lease containing a covenant that the entire crop shall be the property of the landlord until all advances made by him to the tenant shall be paid, is not subject to attachment by a creditor of the tenant while such advances remain unpaid.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*John F. Ellison.* and *I. S. Belcher*, for Appellant.

In an action of replevin where the defendant claims a return of the property to him, each party is an actor. The court erred in allowing the plaintiff to dismiss his complaint as to the hogs, and in striking out from defendant's amended answer all that part relating to the hogs. (Code Civ. Proc. § 581 ; *Gould* v. *Scannell*, 13 Cal. 431.) Mayfield had an attachable interest in the crop. He was tenant in common with the owner of the land. (*Hewlett* v. *Owens*, 50 Cal. 474 ; *Bernal* v. *Hovious*, 17 Cal. 542 ; *Knox* v. *Marshall*, 19 Cal. 622 ; *Walls* v. *Preston*, 25

Cal. 63 ; *Caswell* v. *Destrich,* 15 Wend. 379 ; *Putnam* v. *Were,* 1 Hill, 235 ; *Harrower* v. *Heath,* 19 Barb. 331 ; *Dinehart* v. *Wilson,* 15 Barb. 595 ; 1 Wash. Real Prop. p. 497.) Being subject to attachment for Mayfield's debt, the sheriff could take the whole crop into possession. (Code Civ. Proc. § 688 ; *Jones* v. *Thompson,* 12 Cal. 191 ; *Waldman* v. *Broder,* 10 Cal. 378 ; *Robinson* v. *Tevis,* 38 Cal. 611 ; *Hewlett* v. *Owens,* 50 Cal. 474 ; *Bernal* v. *Hovious,* 17 Cal. 542.) That portion of the instrument which purported to give Howell a lien on Mayfield's portion of the crop was void as to the creditors of the latter. (Civ. Code, §§ 2955, 2978 ; *Butterfield* v. *Baker,* 5 Pick. 522 ; *Johnson* v. *Crofoot,* 53 Barb. 574 ; *Chamberlain* v. *Jones,* 5 Heisk. 210 ; Jones on Mort. § 479.)

*Chipman & Garter,* for Respondent.

The allowance of the amendment to the complaint rested in the discretion of the court. (Code Civ. Proc. § 473.) Even if the allowance of the amendment were a partial dismissal of the action, it was not error. The motion of plaintiff to strike out that part of the complaint relating to the hogs was properly granted. As the case then stood, the complaint was for the recovery of grain. The defendant could not introduce an issue as to other property. (*Lovensohn* v. *Ward,* 45 Cal. 8.) The matter stricken out was not a proper subject of counter-claim or cross-complaint. (*Jeffreys* v. *Hancock,* 57 Cal. 646.) The matter stricken out was irrelevant. (*Green* v. *Palmer,* 15 Cal. 411 ; *Bates* v. *S. N. L. W. & M. Co.* 18 Cal. 171 ; *Frost* v. *Harford,* 40 Cal. 166 ; *Hook* v. *White,* 36 Cal. 300 ; *Wedderspoon* v. *Rogers,* 32 Cal. 571 ; *People* v. *Hagar,* 52 Cal. 190 ; *Larco* v. *Casaneuava,* 30 Cal. 565.) Mayfield had no attachable interest in the grain. In cropping contracts an exclusive right or title to the crop may be reserved by apt words to either party. (*Bernal* v. *Hovious,* 17 Cal. 542 ; *Walls* v. *Preston,* 25 Cal. 63 ; *Wentworth* v. *Miller,* 53 Cal. 9 ; *Tuohy* v. *Wingfield,* 52 Cal. 319 ; *Robinson* v. *Haas,* 40 Cal. 474 ; Drake on Attachments, §§ 245, 246 ; *Andrew* v. *Newcom,* 32 N. Y. 417 ; *Van Hoozer* v. *Cory,* 34 Barb. 9 ; *Crosby* v. *Redman,* 10 Reporter, 306 ; *McCumbes* v. *Becker,* 3 Hun, 342 ; *Ponder* v. *Rhea,* 32 Ark.

435; *Smith* v. *Aetkins,* 18 Vt. 461; *Leland* v. *Sprague,* 28 Vt. 746; *Esdon* v. *Colburn,* 28 Vt. 631.)

ROSS, J. — The plaintiff brought this action to recover the possession of four thousand four hundred and fifty-five sacks of wheat, seven hundred and sixty-four sacks of barley, and two hundred and thirty head of hogs. In his complaint, which was verified, he alleged that he was the owner of the grain and hogs, and that defendant had, without his consent, taken the said property into his possession, and continued to withhold it from the plaintiff. Defendant who, at the times mentioned in the record, was sheriff of Tehama County, answering the complaint — the answer being also verified — denied the ownership by the plaintiff of the property in question, and alleged that the same was owned by the plaintiff and one Mayfield as tenants in common, and that in his official capacity he (defendant) levied upon and took all of the property into his possession, under and by virtue of two certain writs of attachment duly issued out of the Superior Court of Tehama County in certain actions against Mayfield. Defendant also alleged in his answer that after his levy, the plaintiff, by virtue of a writ of replevin, took all of the property from his (defendant's) possession, and asked a return thereof to him, to be held subject to the aforesaid writs of attachment. When the case came on for trial, the court below, on motion of the plaintiff and against the objection and exception of the defendant, allowed the plaintiff to amend his complaint by striking therefrom all of the allegations in relation to the two hundred and thirty head of hogs, and also struck out of the defendant's answer all reference thereto. This was done upon the verbal statement of plaintiff's counsel that the defendant had not in fact levied the writs of attachment upon the hogs. But not only did the verified complaint of the plaintiff show that defendant had taken the hogs, but defendant, in his verified answer alleged that he had levied upon them, and further alleged that subsequently to his levy the plaintiff, by virtue of a writ of replevin, had taken the hogs from his (defendant's) possession. Under such circumstances the court below erred in allowing the amendment to the complaint, and in striking out the portions of the answer referred to; for if the averments of the answer were

true, the effect of the action of the court was to take the hogs from the possession of the defendant and transfer them to the plaintiff without affording the defendant an opportunity to try the question of his right to their return, which he affirmatively alleged. For this error we must reverse the judgment and remand the cause for a new trial; and as there must be a new trial, it is proper that we should pass upon the other question in the case.

The action of the court below in the respect already indicated left the case to be tried only as to the wheat and barley; and it was as to that only that the case was tried. Upon this branch of the case the question is, did Mayfield have an attachable interest in the grain? It was raised by him on land belonging to the plaintiff, under a written instrument by which the plaintiff leased and demised to Mayfield the land for a certain term, with the covenant, among others, on the part of Mayfield, that he would till and cultivate the land in a good farmer-like manner, and at the proper time would sow the land to wheat, oats, or barley, or proportions of each, and at the proper time would harvest, thrash, clean, and sack the grain, and thereupon deliver all of it to plaintiff, to be held by him as security for all advances made by him to Mayfield, together with interest thereon, at the rate of one and one half per cent per month; "and," proceeds the contract, "such demands being satisfied, the said party of the first part (plaintiff) agrees, that upon said grain being sacked and delivered as aforesaid, he will deliver and transfer to the said party of the second part (Mayfield) his three fourths of said grain, quality and quantity considered."

The instrument contained this further clause: "And it is mutually covenanted and agreed that until such delivery and transfer by the said party of the first part (plaintiff), all of said grain shall be the property of the said party of the first part, and the said party of the second part (Mayfield) shall have no right to dispose of any portion thereof."

There was also a provision to the effect that the grain should be delivered after it was sacked, at the nearest depot or warehouse, and that the plaintiff should pay one fourth of the cost of hauling it, and one fourth of the cost of the sacks used. There is no doubt that where one man farms land of another

under an agreement by which he is to give the owner a part of the crop raised for its use, he and the owner, in the absence of a stipulation providing otherwise, become tenants in common of the crops raised. But it is just as clear that the agreement between the parties may be so framed as to secure to the owner of the land the ownership of the product until the performance of a certain stated condition. (*Wentworth* v. *Miller*, 53 Cal. 9; *Andrew* v. *Newcomb*, 32 N. Y. 419; *Lewis* v. *Lyman*, 22 Pick. 437; *Ponder* v. *Rhea*, 32 Ark. 435; *Smith* v. *Atkins*, 18 Vt. 461.) In the present case the parties expressly agreed that all of the grain raised on the land by Mayfield should be delivered to the plaintiff and remain his property, and in no way subject to the disposal of Mayfield until all of such advances as the plaintiff may have made him had been satisfied, and he had thereupon received from the plaintiff his share of the grain, which plaintiff bound himself to deliver. Until all this happened, all of the grain, by the express contract of the parties, was to be and remain the property of the plaintiff, and in no way subject to the disposal of Mayfield. That it was competent for the parties so to provide has already been shown, and having so provided, it results that Mayfield had no attachable interest in the grain at the time of the levy of the writs in question. "It is a fundamental principle," says Drake on Attachment, section 245, "that an attaching creditor can acquire no greater right in attached property than the defendant had at the time of the attachment. If, therefore, the property be in such a situation that the defendant has lost his power over it, or has not yet acquired such interest in or power over it as to permit him to dispose of it adversely to others, it cannot be attached for his debt." (See also authorities cited in support of the text, and *Tuohy* v. *Wingfield*, 52 Cal. 319.)

Our conclusion is that the ruling of the court below was right with respect to the grain, but erroneous in regard to the hogs involved in the controversy.

Judgment and order reversed, and cause remanded for a new trial.

McKINSTRY, J., and McKEE, J., concurred.